UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VETRA PERRY-ROMAN, individually, and on behalf of all others similarly situated,<br><br>                    Plaintiff(s),<br><br>        v.<br><br>AIG RETIREMENT SERVICES, INC. And THE VARIABLE ANNUITY LIFE INSURANCE COMPANY,<br><br>                    Defendant(s). | CASE NO. CV 09-2287 DOC (RNBx)<br><br>O R D E R GRANTING MOTION TO DENY CLASS CERTIFICATION |

_____

   Before the Court is Defendants AIG Retirement Advisors, Inc. (now known as VALIC Financial Advisors ("VFA")) and The Variable Annuity Life Insurance Company ("VALIC") (collectively "Defendants") Motion to Deny Class Certification (the "Motion to Deny Certification").  After considering the moving, opposing, and replying papers, as well as the parties' oral argument, the Court hereby GRANTS the Motion.

**I.  Background**

VALIC enters into agreements with nonprofit employers to individually offer their employees a range of financial products and services.  These products and services include fixed and variable annuities, mutual funds, multiple 401(k) and 403(b) products, 529 plans, brokerage accounts, traditional and Roth IRAs, multiple forms of life and care insurance, rollover services, educational seminars, and financial planning tutorials.  VALIC dispatches Financial Advisors (FAs) to offer and sell these financial products and services to nonprofit employers.  The FA offers to nonprofit employers multiple VALIC and non-VALIC financial products.  *See* Declaration of Keith Poch ¶¶ 3-4.

VALIC FAs meet with customers at the customer's place of employment or the customer's home.  *Id.*  During these meetings, they solicit and obtain information including but not limited to: (1) the customer's current finances; (2) the customer's financial needs and goals; (3) the customer's retirement outlook; and (4) the customer's investment risk tolerance.  After synthesizing this information, the FA will "recommend particular financial products for the customer to purchase."  After cementing a relationship with a particular customer, an FA must ensure that those are still suitable recommendations and that their objectives haven't changed."  Each FA is afforded considerable discretion in determining his/her work schedule and crafting a sales strategy.

FAs undergo centralized and uniform training and initiation processes.  *See* Transcript of the Deposition of Keith Poch at 103:15 (discussing emphasis on "consistency around [VALIC's] on-boarding process" after the hiring of each FA); *see also* Ex. D to Opp'n at 2418-65 (PowerPoint presentation shown to all FAs instructing them to "always ask for the sale").  Each FA also receives the same Employee Handbook, submits to identical terms of representation, receives an identical company-issued laptop and/or BlackBerry Device, and must use the same VALIC marketing materials.  *See id.*  VALIC classifies all its FAs as "outside salespersons" exempt from overtime requirements under California law.  *See* Exhibit A to Declaration of Matthew Bainer at 6:6-11.

Plaintiff interviewed at VALIC in May 2008 and was hired as an FA shortly thereafter.

1  She attended VALIC's Basic Sales Training in July 2008.  Plaintiff formally resigned from
2  VALIC on February 11, 2009 and filed her First Amended Complaint ("FAC") on February 6,
3  2009.   In relevant part, the FAC alleges that Defendants violated California Labor Code § 510
4  by neglecting to pay each of their employees overtime pay for any time spent working beyond
5  eight hours in a single day or more than forty hours in one week.  Defendants asserted the
6  affirmative defense that FAs satisfy the "Outside Salesperson" exemption under Industrial
7  Welfare Commission Order No. 4-2001(2)(m).

## II.     Legal Standard

Federal Rule of Civil Procedure 23 governs class actions.  FED. R. CIV. P. 23.  A party seeking class certification must demonstrate the following prerequisites: (1) numerosity of plaintiffs; (2) common questions of law or fact; (3) that the named plaintiff's claims and defenses are typical; and (4) that the named plaintiff can adequately protect the interests of the class.  FED. R. CIV. P. 23(a).  A district court must engage in a "rigorous analysis" to determine whether the party seeking certification has met the prerequisites of Rule 23(a).  *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1233 (9th Cir. 1996) (*quoting In re Am. Med. Sys.*, 75 F.3d 1069, 1079 (6th Cir. 1996)).  The party may not rest on mere allegations, but must provide facts to satisfy these requirements.  *Doninger v. Pac. Northwest Bell, Inc.*, 564 F.2d 1304, 1309 (9th Cir. 1977).

The decision to grant or deny a motion for class certification is committed to the trial court's broad discretion.  *E.g., Yamamoto v. Omiya*, 564 F.2d 1319, 1325 (9th Cir. 1977).  In determining whether a plaintiff has satisfied the requirements of Rule 23, a court may not inquire into whether the plaintiff will prevail on the merits of the case.  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78, 94 S. Ct. 2410 (1974).  However, while a court must accept the substantive allegations in the complaint as true, *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.,* 691 F.2d 1335, 1342 (9th Cir. 1982), in some cases it may be necessary for the court to look beyond the pleadings to determine whether the plaintiff has satisfied the certification requirements.  *Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 160, 102 S. Ct. 2364 (1982).

After satisfying the four prerequisites of numerosity, commonality, typicality, and

adequacy, a party must also demonstrate either: (1) a risk that separate actions would create incompatible standards of conduct for the defendant or prejudice individual class members not parties to the action; or (2) the defendant has treated the members of the class as a class, making appropriate injunctive or declaratory relief with respect to the class as a whole; or (3) common questions of law or fact predominate over questions affecting individual members and that a class action is a superior method for fairly and efficiently adjudicating the action. FED. R. CIV. P. 23(b). With respect to the instant Motion, both parties restrict their briefing to the requirements of Rule 23(b)(3) and the Court's determination as to predominance is therefore dispositive.[1]

### III. Discussion

By their Motion, Defendants move for denial of class certification on the grounds that individual issues predominate over common issues. *See* Fed. R. Civ. P. 23(b)(3). Though unusual, Defendants' "preemptive" motion is not precluded by Rule 23. *See Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 939 (9th Cir. 2009) ("Nothing in the plain language of Rule 23(c)(1)(A) either vests plaintiffs with the exclusive right to put the class certification issue before the district court or prohibits a defendant from seeking early resolution of the class certification question.").

Rule 23(b)(3) requires "that the questions of law or fact common to class members predominate over any questions affecting only individual members." *See Achem Prods., Inc. v. Windsor*, 521 U.S. 591, 609, 117 S. Ct. 2231 (1997). A party seeking class certification under Rule 23(b)(3) must demonstrate both that "the questions of law or fact common to class members predominate over any questions affecting only individual members" and that "a class

---

[1] At oral argument, counsel for Plaintiff implied that Plaintiff reserves its right to later pursue class certification on other Rule 23(b) provisions. Plaintiff does not make this argument in its opposition to Defendants' Motion. Nor does Plaintiff make this argument in its *own* Motion for Class Certification (*see* Dkt. 161.) To the extent that the Court's disposition as to the instant Motion causes Plaintiff to seek certification on other grounds prior to the Scheduling Order's filing deadline, Plaintiff may file for leave to amend its pending Motion for Class Certification.

4

1  action is superior to other available methods for fairly and efficiently adjudicating the
2  controversy." Fed. R. Civ. P. 23(b)(3).
3       The central issue in this lawsuit is whether VALIC FAs constitute "outside salespersons"
4  under Industrial Welfare Commission Order No. 4-2001 and therefore are not entitled to wage,
5  hour, and working conditions standards under California Labor Code §§ 1171-1205:

> "Outside salesperson" means any person, 18 years of age or over,
> who customarily and regularly works more than half the working
> time away from the employer's place of business selling tangible or
> intangible items or obtaining orders or contracts for products,
> services or use of facilities. An "outside salesperson" does not
> include an employee who makes deliveries or service calls for the
> purpose of installing, replacing, repairing, removing, or servicing a
> product.

Indus. Welfare Comm'n, Order No. 4-2001(2)(m); 8 Cal. Code Reg. § 11040(2)(M) (2006).

     Plaintiff argues that no VALIC FA is an "outside salesperson" under Order No. 4-2001(2)(m) on the basis that every FA spends more than 50 percent of the workday on the following six tasks: (1) "collecting and analyzing information regarding customers' income, assets, investments, or debts;" (2) "determining which financial products best meet the customer's needs, goals, and circumstances;" (3) advising customers with respect to the advantages and disadvantages of different financial products;" (4) "preparing proposals for bidding on new business;" (5) "marketing the financial products and services for which they obtain orders or contracts under their registered representative agreement;" and (6) "generally servicing the needs of existing and potential clients." Plaintiff reaches its conclusion on the basis of Defendants' response to an interrogatory, requesting the identification of tasks that VALIC considers "exempt under California law." *See* Ex. A to Bainer Decl. At 6.

     Plaintiff concedes that there is significant variance among FAs in terms of the amount of time spent away from the office. Plaintiff nonetheless asserts that <u>because all FAs spend more than 50 percent of their time on the same six tasks,</u> the determination of whether an FA is an

5

"outside salesperson" can be made on a class wide basis.[2]  Plaintiff's argument, though innovative, is nonetheless unavailing for three basic reasons.

After reviewing in considerable depth the factual record – which includes VALIC training materials, the declarations attached to the parties' briefing, and other discovery including interrogatory responses and deposition testimony – the Court finds that individualized issues prevail.  Plaintiff has simply failed to prove that VALIC FAs are commonly constrained other than holding an identical job title and receiving identical incentives with respect to commissioned sales.  The manner in which each FA sells financial products may vary widely – for example, and as discussed at oral argument, one FA may make a living by selling multiple financial products to a single customer, while another FA may sell many customers a few products.  Alternatively, one FA may find success with a restrained strategy that entices, but does not pressure customers, while another may use more aggressive tactics, like door-to-door sales.  Indeed, the six tasks identified by Plaintiff, as well as the four tasks referred to in common paragraph 12 of the declarations attached to Defendants' papers, are so broad and amorphous that they collectively fall within the ambit of "generally servicing the needs of existing and potential clients."  The Court is convinced that the actual activities that comprise the six "tasks" vary greatly on an FA-by-FA basis, a belief confirmed the representations of both counsel at oral argument.

This case therefore mirrors the fact situation in *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, No. C 06-01770 MHP, 2010 WL 174329 (N.D. Cal. Jan. 13, 2010), a case in which the district court declined to certify a putative class of employees "whose primary function is to market and sell residential mortgages." *Id.* at *1.  In that case, the district court initially granted certification on the sole basis that, like in this case, every member of the putative class was

---

[2]  In her supplemental briefing in response to the Court's tentative order, Plaintiff argued that a determination on the merits of whether any or all of the six tasks constitute sales activity is improper at the class certification stage and the Court generally agrees.  However, it is well settled that a "district court may consider the merits of the claims to the extent that it is related to the Rule 23 analysis." *See Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 947 n. 15 (9th Cir. 2009).

6

designated as exempt under the "outside salesperson" exemption. *Id.* On appeal, the Ninth Circuit reversed the district court's initial order in *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935 (9th Cir. 2009), which considered class certification improper in a case where each putative class member "was granted almost unfettered autonomy to do his or her job." 571 F.3d at 947. Each FA, here, likewise enjoys considerable "flexibility" and "entrepreneurial" license in developing consumer relationships. *See* Ex. B to Bainer Decl. 2 at 79.[3]

In essence, Plaintiff's argument places undue weight upon a single response to an interrogatory.[4] Though Plaintiff also cites the declaration of a VALIC executive, a closer examination of the deposition transcript reveals that the executive was presented with the list of six activities before answering the question. *See* Poch Deposition Tr. at 7:22-8:1. Nowhere is there evidence that the list of six tasks was institutionalized, or that the activity and progress of each FA was measured against the six tasks – *i.e.*, no evidence of a mechanism that prevented an FA from completing duties without engaging in the six tasks more than 50 percent of the time.

---

[3] Nor are Plaintiff's authorities availing, since all of them involve putative class members subject to mechanized, top-down, and uniform supervision with defined sets of tasks and little room for flexibility. *See, e.g.*, *Tierno v. Rite Aid Corp.*, No. C 05-02520, 2006 WL 2535056 (N.D. Cal. Aug. 31, 2006) ("Rite Aid has implicitly conceded that a single set of tasks is applicable to all Store Managers."). Moreover, such cases' express reliance on the fact that members of the putative class were uniformly classified as exempt is unavailing after the Ninth Circuit's decision in *Vinole*. *See Tierno*, 2006 WL 2535056, at *9 (relying on *Wang v. Chinese Daily News, Inc.*, 231 F.R.D. 602 (C.D. Cal. 2005), *abrogated by Vinole*, *supra*). The mere fact that each FA trains in the same location and receives the same equipment does not liken this case to *Tierno*. None of the facts relied upon Plaintiff are particularly relevant to the manner in which each FA performs her duties, nor are these commonalities relevant to the underlying claims in this lawsuit.

[4] The introduction to Plaintiff's memorandum in opposition to Defendants' Motion summarizes Plaintiff's own argument as follows: "[W]hat Plaintiff is challenging in this lawsuit is Defendant's assertion that [the six tasks] meet the legal definition of 'selling tangible or intangible items' under the asserted exemption." *See* Opp'n at 1:10-11. The remainder of Plaintiff's opposition brief retains this narrow focus on the six "tasks" identified by Defendants in a single interrogatory response. Notably, none of these tasks is identified in the FA training materials.

Indeed, Plaintiff perverts an exchange in the deposition during which VALIC's executive provides repeated confirmation that each FA is advised to spend more than 50 percent of their time engaged in the six tasks identified by Defendants' in their interrogatory responses. *See id.* at 76-81. However, when asked whether each FA actually spends the time recommended, the executive noted that he was "not sure [VALIC] verif[ies], you know, each individual advisors these documents describe. This is sort of an entrepreneurial business, ***so they have a lot of flexibility in setting their hours and doing those things***." *Id.* at 79:9-13; *see also id.* at 79:17-18 ("at the end, it's really sales results that identify their level of activity").

In short, the deposed executive – upon whose testimony Plaintiff so heavily relies – appears capable of speaking to, at most, the expectations but not the actual activity of FAs. During the deposition, counsel for Plaintiff referenced an Employee Handbook, which reads: "As a financial advisor, a majority of your work time is spent in the field engaging in activities that are intended to result in the sales of VALIC and non-VALIC financial products and services to prospective and present VALIC customers." When asked whether the activities referenced in the handbook "are specified as [the six tasks]," the deponent responded: "I believe it does include some of those." *Id.* at 82:13-14. In short, the Court is not inclined to credit unclear testimony as definitive evidence that *every* VALIC FA regularly spends more than 50 percent of his time outside the office engaged in the six tasks identified in certain interrogatory responses. This conclusion is only re-affirmed upon review of the training materials delivered to each FA, which include broad advice concerning interviewing, marketing, and other techniques designed toward a single goal: "ALWAYS ask[ing] for the sale." *See* Ex. B to Bainer Decl. at 2465 (emphasis in original); *see also id.* at 2468 (identifying "interview cycle" that includes nine tasks dissimilar from six tasks identified in Defendants' interrogatory responses). If the Court were to illustrate its conclusion about the dissimilarity in the tasks engaged in by FAs, the resulting graph would resemble the one shown on page 37 of the FA PowerPoint training. *See id.* at 2450.

Further, Plaintiff neglects to acknowledge that, in addition to purportedly identifying the six tasks that comprise more than 50 percent of each FA's day, Defendants' interrogatory

8

1  responses *also* claimed to identify all remaining tasks engaged in by each FA.  *See* Ex. A to
2  Bainer Decl. in Support of Mot. for Class Certification (Bainer Decl. 2) at 9 (identifying "talking
3  to one's manager . . .[,] preparing and sending expense reports . . .[,] studying the market . .
4  .[and,] participating in company training programs.").  Though Plaintiff concedes in its
5  supplementary briefing that "some of the work" engaged in by each FA "may well very well
6  qualify as 'sales' activity," Plaintiff does not argue that any of these four tasks qualify as such.
7  Plaintiff cannot have it both ways: she cannot both give undue credit to Defendants' casual
8  summary of FAs' tasks, and simultaneously reserve for herself the ability to reject Defendants'
9  summary when it suits her.  Indeed, Plaintiff does not even acknowledge the objections lodged
10 by Defendants' to her interrogatories, one of which (fittingly) notes that the wording of
11 Plaintiff's interrogatory is "nonsensical and incapable of response because FAs are exempt
12 employees who perform the different exempt duties which comprise the FA position *with*
13 *varying frequency*."  *See* Ex. A to Bainer Decl. 2 at 7 (emphasis added) (also noting that
14 identification of "'each task performed by Class Members' would require an extensive survey,
15 analysis and review of *every individual* purported Class Member with respect to the tasks each
16 engages in carrying out their duties intended to result in the sales of VALIC and non-VALIC
17 financial products . . .") (emphasis added).
18        Third, surveys submitted in support of Defendants' Motion to Deny Certification confirm
19 that *even FAs* are unfamiliar with the six tasks identified by Plaintiff.  *See, e.g.*, Declaration of
20 Tom Parzakonis at 2 (declaring that he spends "98% of the time providing investment advice to
21 current and prospective clients and performing other sales-related activities, including:
22 (a) collecting information from clients about their needs; (b) describing available financial
23 products to clients and helping them to select ones submitted to their needs; (c) preparing and
24 helping clients to complete contracts and related product materials; and (d) scheduling
25 appointments and meeting with clients, including time traveling to meet with clients or
26 prospective clients.").  Some of these tasks appear identical to the list of six referenced by
27 Plaintiff, yet, in the alternative, all four could be captured by the sixth task – "generally servicing
28

9

the needs of existing and potential clients."[5] The only way Plaintiff's argument makes sense is if *none* of the tasks engaged in by VALIC FAs constitute sales, but: (1) Plaintiff admits quite the contrary; *see* Pls.' Supplemental Brief at 1, and (2) if that were Plaintiff's argument, then it would require such a broad inquiry into what "general[] servicing the needs" meant that class certification would be improper. Simply because all members of a putative class are engaged in the satisfaction of client needs does not mean that common issues of fact predominate. *See Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 947 (9th Cir. 2009).[6]

Class certification is not warranted when vague and overlapping descriptions are used to find common ground among a group of employees who execute their job responsibilities on an individualized basis. There is no script that each FA must follow. Nor are FAs compensated on a basis that requires uniformity. The employee training manual itself encourages FAs to respond to each potential customer's highly individualized needs. To conduct an "outside salesperson"

---

[5] At oral argument, counsel for Plaintiff offered to proceed under a *new* legal theory – that none of the tasks identified in the FA declarations submitted by Defendants constitute sales activity. While counsel's creativity is impressive, this argument misses the point: the "list of four" tasks, like the "list of six" tasks is broad to the point of meaninglessness. Admittedly, all of the declarant FAs spent more than 50 percent of their time performing a virtually identical group of tasks. But the description of the tasks is so amorphous and overlapping, a point made by counsel for Plaintiff, that an individualized inquiry would be inevitable. For example, if every FA declared that she spent 100 percent of her time "working for VALIC," that would hardly be sufficient for class certification. What Plaintiff's argument reduces to is the argument rejected by the Court in *Vinole* and, subsequently, *In re Wells Fargo*: the mere fact that a company has a number of workers with co-equal titles and similar responsibilities does not render class treatment proper under Rule 23(b)(3). *See In re Wells Fargo Home Mortgage Overtime Pay Litig.*, No. C 06-01770 MHP, 2010 WL 174329 (N.D. Cal. Jan. 13, 2010).

[6] Plaintiff also cites the additional declarations submitted in support of Defendants' reply brief. The Court has reviewed these declarations and has addressed their import in this general discussion contained in *supra* note 3. As to the substance of these declarations, it is worth nothing that the "percentage" identified by each surveyed FA is different, even though Plaintiff claims that they all perform the same tasks. The likely fact is that the declarants provide rough estimates because they do not measure their job performance in terms of any of these tasks – indeed, the statements with respect to "flexibility" contained in the Poch declaration support this conclusion.

1 analysis across the putative class would result in numerous individualized inquiries of the
2 manner in which each FA achieved the ultimate objective of "engag[ing] in the activities that
3 result in the sale of financial products. That's what they do." *See* Ex. B to Bainer Decl. 2 at
4 81:5-7.

Having reviewed the voluminous exhibits, including the declarations of current FAs, the deposition testimony of a supervisor at VALIC, and the actual training materials delivered to each FA, the Court concludes that questions of law or fact common to class members do not predominate over any questions affecting only individual members. Accordingly, the requirements of Rule 23(b)(3) are not satisfied.

**IV. Disposition**

For the foregoing reasons, the Court GRANTS the Motion.

IT IS SO ORDERED.

DATED: February 24, 2010

_____
DAVID O. CARTER
United States District Judge